UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| D.B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:12-CV-00654 JAR |
| ) | |
| ST. CHARLES COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, by and through counsel, and for her response to Defendant St. Charles County's Motion for Summary Judgment states as follows:

**STATEMENT OF MATERIAL FACTS**

Plaintiff incorporates by reference her statement of facts as to which a genuine issue exists and her response to the Statement of Uncontroverted Material Facts filed by Defendant St. Charles County (hereafter "Defendant" or "Defendant County").

**ARGUMENT**

**I. THE MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DEFENDANT ST. CHARLES COUNTY HAS NOT MET ITS BURDENS OF PRODUCTION OR PROOF.**

The basic principles regarding the burden of production and proof on a Rule 56 motion for summary judgment are well settled:

> the party moving for summary judgment has the burden of demonstrating that the Rule 56(c) test—"no genuine issue as to any material fact"—is satisfied and that the movant is entitled to judgment as a matter of law. The movant is held to a stringent standard. Before summary judgment will be granted it must be clear

> what the truth is and any doubt as to the existence of a genuine issue of material fact will be resolved against the movant. Because the burden is on the movant, the evidence presented to the court always is construed in favor of the party opposing the motion and the opponent is given the benefit of all favorable inferences that can be drawn from it. Finally, facts asserted by the party opposing the motion, if supported by affidavits or other evidentiary material, are regarded as true.

10A C. Wright, A. Miller, M. Kane, R. Marcus & A. Steinman, FED. PRAC. & PROC. CIV. § 2727 (3d ed.) (citing *Scott v. Harris*, 550 U.S. 372 (2007), *Hunt v. Cromartie*, 526 U.S. 541 (1999), *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464 (1962), and other authorities).

Rule 56 imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment. Defendant County has failed to make such a showing and, therefore, is not entitled to summary judgment.

Defendant County supports its motion for summary judgment with a Statement of Uncontroverted Material Facts that contains twelve--and only twelve--so-called "facts." *See* Dft. Statement of Uncontroverted Material Facts [doc 48] (hereafter "Dft. Statement of Facts"). Defendant's Statement of Uncontroverted Material Facts was filed in compliance with Local Rule 7-4.01, which specifies the exclusive manner in which Defendant is to present the facts and evidence in support of its motion for summary judgment:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations.

L.R. 7-4.01(E). Any citation by Defendant to facts or material outside its Statement of Uncontroverted Material Facts [doc. 48] is prohibited by the Local Rules.

Some, but not all, of the "facts" contained in Defendant's Statement of Uncontroverted Material Facts are supported by citations to the record. *Compare* Dft. Statement of Facts ¶¶ 2-4

(referring to entire Neer deposition, albeit without citation to any specific pages or lines) and Dft. Statement of Facts ¶ 6 (referring to "Exhibit C") *with* Dft. Statement of Facts ¶¶ 5, 7 (citing no supporting evidence) *and* Dft. Statement of Facts ¶¶ 1, 8 (referring to assertions in pleadings, but citing no supporting evidence). Other "facts" offered by Defendant are not facts at all, but recitations of law and arguments about the law. *See*, *e.g.*, Dft. Statement of Facts at ¶¶ 9-12 (reciting and making arguments about state and municipal laws, but citing no supporting evidence about the implementation of those laws or their application to this case).

The facts and evidence offered by Defendant County—or, in some cases, the naked assertions made by the County—are inadequate to support summary judgment. First, Defendant County presents facts concerning Officer King's training and asserts that Officer King was properly trained. Dft. Statement of Facts ¶¶ 2-6. This evidence—even if true—does not address the principal thrust of Plaintiff's municipal liability claim, namely that Defendant County's failed to supervise and discipline Officer King and Defendant County had a custom and usage of failing properly to supervise and discipline the officers in its police department, thus creating an environment in which violations of law and policy were condoned.

Second, Defendant County asserts, without supporting evidence, that, "St. Charles County monitored and supervised Jason King's compliance with its policies and procedures and was disciplined [sic] when he breached the policy and/or procedure." Dft. Statement of Facts ¶ 7 (citing no supporting evidence). This naked assertion, without supporting evidence, is not sufficient to make a prima facie case for summary judgment. *See* Fed. R. Civ. P. Rule 56(c)(1) (stating in relevant part that, "[a] party asserting that a fact cannot be … genuinely disputed *must* support the assertion by … citing to particular parts of materials in the record …") (emphasis added).

Third, Defendant County offers certain material concerning its disciplinary policies, including the circumstances in which the County deems it appropriate to impose immediate discipline without the use of "progressive measures." *See* Dft. Statement of Facts 8-12. However, Defendant offers no facts or evidence as to how this policy was applied, if at all, to Officer King or anyone else in the Police Department.

Finally, in addition to offering the evidence or arguments above, Defendant County appears to argue that Plaintiff's own evidence is insufficient to establish the essential elements of Plaintiff's claim. *See*, *e.g.*, Dft. Statement of Facts ¶ 5 (stating that, "Plaintiff D.B. is without any additional information pertaining to the training of Jason King by Defendant St. Charles County."). However, Defendant County makes no effort to establish the inadequacy of the evidence in the record. For example, Defendant County does not review the evidence that exists or show why that evidence, viewed in the light most favorable to Plaintiff, with all reasonable inferences drawn in favor of Plaintiff, does not support a judgment for Plaintiff. These failures render Defendant's argument little more than a denial of Plaintiff's allegations, and the courts have routinely held that, "mere denial by a moving defendant of the allegations made by a non-moving plaintiff in his or her complaint is not enough" to satisfy the affirmative burden on the party moving for summary judgment. *McKinney v. Dole*, 765 F.2d 1129, 1135 (D.C. Cir. 1985) (citing 10A C. Wright, A. Miller, & M. Kane, FED. PRAC. & PROC. § 2727 (2d ed. 1983)).

Because Defendant County has not met its burden of production, Plaintiff is not obligated to present evidence in opposition to the motion. Nonetheless, Plaintiff sets forth below the considerable evidence in the record supporting her claim of municipal liability and showing the existence of genuine issues of material fact that preclude the entry of summary judgment.

When considering the evidence offered by Plaintiff, it should be noted that, "[t]he burden on the nonmoving party is not a heavy one; the nonmoving party simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." 10A C. Wright, A. Miller, M. Kane, R. Marcus & A. Steinman, FED. PRAC. & PROC. CIV. § 2727 (3d ed.) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) and other authorities). According to the Supreme Court:

> It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*First Nat. Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968).

The Eighth Circuit has noted that, "[s]ummary judgment is an extreme remedy and is to be granted only where the record clearly demonstrates no genuine issue of material fact." *Glover v. National Broadcasting Co., Inc.*, 594 F.2d 715, 717 (8th Cir. 1979). Plaintiff is entitled to the benefit of all reasonable doubts and inferences and, "[i]f there exists the *slightest doubt* as to a factual dispute or 'genuine issue of fact,' summary judgment should be denied." *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*, 395 F.2d 388, 389 (8th Cir. 1968) (emphasis added) (citing *Poller v. Columbia Broadcasting Sys., Inc.*, supra).

As Plaintiff will show below, there exist genuine issues of material fact on Plaintiff's municipal liability claim against Defendant County and, as a result, the motion for summary judgment should be denied.

**II.     THE MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THE EVIDENCE REVEALS THAT THE ST. CHARLES COUNTY SHERIFF'S DEPARTMENT WAS CONTROLLED BY SHERIFF TOM NEER AND THE FAILURE TO ADEQUATELY TRAIN, SUPERVISE, DISCIPLINE AND**

**CONTROL THE PEACE OFFICERS EMPLOYED BY ST. CHARLES COUNTY CAUSED THE DEPRIVATION OF RIGHTS SUFFERED BY PLAINTIFF.**

Defendant St. Charles County advances, primarily, arguments that revolve around the contentions that St. Charles County Deputies are trained within the standards of Missouri Law and that the Defendant County has in place superficial policies, including a merit system of hiring and retention, that compel a finding that Defendant County has no liability for the conduct of Jason King.[1] The Defendant's arguments that are grounded in the positive law are reminiscent of a similar scheme of superficial rules, regulations and guidelines found in *Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996). The *Beck* court observed, "[f]ormalism is often the last refuge of scoundrels…" *Id*. at 974. Plaintiff has developed sufficient evidence to submit to the jury the question of whether or not St. Charles County, in fact, has discharged its duties to screen, train, supervise and discipline its Sheriff's Deputies. In the context of the *Beck* decision, but apropos of the operation of the St. Charles County Sheriff's Department, the court held, "we cannot look to the mere existence of superficial grievance procedures as a guarantee that citizens' constitutional liberties are secure. Protection of citizens' rights and liberties depends upon the substance of OPS investigatory procedures. Whether these procedures had substance was for the jury's consideration." *Id.*

It is undisputed that the elected Sheriff, Tom Neer,[2] who has served as Sheriff since 2006 and was serving when D.B. was sexually assaulted, makes policy for the St. Charles County Sheriff's Department. Plt. Statement of Facts (SOF) ¶¶ 1, 6. The record reveals that, regardless

---

[1] Defendant King has not filed a Motion for Summary Judgment and Defendant County has not contested the allegations of misconduct found in the Complaint. Indeed, the County seems to embrace the truth of them. See, Dft. Memorandum in Support of Motion for Summary Judgment ¶ 7 (reciting allegations from Complaint concerning Defendant King's conduct).
[2] Sheriff Neer testified both as an individual and as the Fed. R. Civ. P. 30(b)(6) designee by Defendant St. Charles County.

of what the positive law may dictate, Sheriff Neer is in control of the Sheriff's Department and of the supervision, discipline and control of the peace officers employed by Defendant County. Plt. SOF ¶¶ 9-24.  There is sufficient evidence from which the jury can make that finding and the further finding that the Sheriff does not effectively supervise, discipline, or control the conduct of his Deputies, but there is one fact that is stark and compelling.

Sheriff Neer supports and continues to employ Christopher Hunt, a Deputy Sheriff who has been convicted of a felony committed while acting as a Sheriff's Deputy.  Plt. SOF ¶'s 2, 3, 83, Declaration of Jason King, ¶ 6.  Moreover, the support of the Sheriff does not end there; Sheriff Neer loaned Deputy Hunt's family money to post an appeal bond for the deputy.  Plt. SOF ¶ 31.[3]  By comparison, Defendant King entered an Alford Plea to the charge of Acceding to Corruption, and resigned in lieu of termination.  Plt. SOF ¶'s 12, 101, 102, 103; Declaration of Jason King, ¶ 3.

Defendant County justifies the actions it took against Defendant King citing transgressions of County ordinance, County charter and Sheriff Department Rules of Conduct, *See*, Dft. Memorandum in Support of Motion for Summary Judgment, 8, yet, the same rules that would require similar discipline against Christopher Hunt have not been applied to his situation.[4] If the positive law, rules and regulations were truly compelling, as asserted by Defendant County, Christopher Hunt would not continue to be employed the St. Charles County, much less financially supported in his litigation by Sheriff Neer.

Defendant asserts that "Defendant King in his deposition testified ad nauseam to mischief in the Sheriff's Department which the Sheriff either denied or set the record straight." Dft.

---

[3] In another incident involving alleged misconduct by a Deputy, Sheriff Neer not only did not discipline the Deputy, he called a lawyer on the Deputy's behalf.  Plt. SOF ¶ 48.
[4] Further, Mr. King was not provided counsel in either the criminal trial or this lawsuit. *See* Declaration of Jason King, ¶¶ 4, 5.

Memorandum in Support of Motion for Summary Judgment, 9. The Defendant mischaracterizes the events described by Defendant King as "mischief." They are instances that reveal the unequal and inconsistent control of the Sheriff's Department that is revealed by the difference in treatment between Deputy Hunt and Defendant King. The assertion that the Sheriff "either denied or set the record straight," is a concession by the Defendant that the testimony of Defendant King compared to that of the Sheriff presents issues of contested fact that must be decided by the jury.[5] The fact that the Sheriff has knowledge of the incidents satisfies the requirement that the policymaker was aware but took no action or ineffective action to correct the misconduct or remedy it.

"The law recognizes that lax discipline creates an atmosphere encouraging police misconduct." *Gentile v. County of Suffolk*, 129 F.R.D. 435, 446 (E.D.N.Y. 1990), *aff'd* 926 F.2d 142 (2nd Cir. 1991). Sheriff Neer agrees with this statement. Plt. SOF ¶ 25. The Sheriff also agrees that it is important for the sworn members to understand that if they engage in misconduct, they will be held accountable by command staff and that the disciplinary system be administered fairly and equally. Plt. SOF ¶ 26. Sheriff Neer has reviewed Mr. King's testimony regarding unequal treatment and it would not be a proper way for the disciplinary system to run. He admits that if Mr. King's testimony it true, it describes improper unequal treatment and lax discipline. Plt. SOF ¶'s 28, 29. These admissions, along with the evidence referred to herein that demonstrates, sufficiently that the question should be submitted to the jury, provide the bases for the jury to find that the actions of the County, through its policymaker, Sheriff Neer, caused –

---

[5] Plaintiff does not concede that for each instance of misconduct and lack of control described by Mr. King, Sheriff Neer offered rebuttal or correction. However, it is irrelevant whether the Sheriff demurred point-by-point as the contrary testimony proves nothing except the question of whether an event or incident occurred or not is a jury question.

were the moving force behind -- the constitutional violations suffered by plaintiff. See *Board of County C'mmnrs v. Brown*, 520 U.S. 397 (1997).

The Sheriff's description of the internal affairs function reveals his autocratic control of that aspect of the St. Charles County Sheriff's Department. The path to a sustained internal complaint against a member of the Sheriff's Department is fraught with impediments. The first step of the process involves an "inquiry" and not all citizen complaints result in an "inquiry." Plt. SOF ¶'s 16, 17. The decision about whether an "inquiry" is made at the Sergeant or Lieutenant level. Plt. SOF ¶ 18. There is no written protocol controlling when a complaint results in an "inquiry" and if the complaint is not treated as an "inquiry" the Sheriff is generally not informed of the complaint. Plt. SOF ¶'s 19, 20. There is no requirement that inquiries are memorialized in writing and forwarded up the chain of command and is a custom of the Sheriff's Department and approved by the Sheriff. Plt. SOF ¶'s 21-23. It is the Sheriff's discretion, by policy, whether an internal affairs investigation is ordered, or not. Plt. SOF ¶ 28. The only time a supervisory incident form is prepared and forwarded to the Sheriff is when there is a recommendation for some discipline. Plt. SOF ¶ 32. Only the Sheriff sees the periodic reports regarding Internal Affairs and the Sheriff ultimately decides whether to sustain or not sustain a complaint. Plt. SOF ¶'s 33-35. Indeed, it is the Sheriff who decides whether to initiate an internal affairs investigation. Plt. SOF ¶ 37.

The filing of a civil rights lawsuit does not prompt an internal investigation, Plt. SOF ¶ 40, and the Sheriff does not in any way track when a Deputy has been sued or the outcome of the case. Defendant Jason King was a defendant in a prior civil rights lawsuit in which the case was settled, yet he remained on the department, free to accost D.B. Plt. SOF ¶ 44.

Conviction for a felony charge is, apparently, similarly not grounds for internal discipline. Christopher Hunt, a convicted felon, has never been disciplined by St. Charles County. Plt. SOF ¶ 5.

Defendant King described the following examples of absent, ineffective, unequal and inconsistent control of the peace officers employed by Defendant County. Under Sheriff Neer, the culture of the department was that supervisors were given "free reign" to implement their beliefs and it was clear that certain people could do things and not suffer consequence. Plt. SOF ¶ 60. There were different standards for different people in the department. Plt. SOF ¶ 61. It was a "good old boys" system in which the "good old boys" were those who were aligned with the Sheriff and the people aligned with the Sheriff. Plt. SOF ¶ 62. Mr. King describes the incident in which a member of the department was involved in a bar altercation. Plt. SOF ¶ 64. This is the same incident referenced in footnote 3, supra, in which the Sheriff not only failed to discipline the Deputy, he assisted the Deputy in securing counsel. Mr. King describes an incident of abuse in the jail and minimal consequences for the offending Deputy. Plt. SOF ¶ 66. He recounted incidents of accidental discharges of weapons Plt. SOF ¶ 67, alcohol abuse and assaultive conduct, Plt. SOF ¶ 68, issues with firearms, Plt. SOF ¶'s 69-71, failure to turn in evidence, Plt. SOF ¶ 76-79, 93 and a culture of unfair punishment based on the allegiance of the Deputy whose conduct was at issue, Plt. SOF ¶'s 80-81. There were instances of Deputies violating state law by drinking while armed and it was common knowledge because supervisors were usually at the parties. Plt. SOF ¶ 94. There was an incident when a Sergeant damaged property in a restaurant, stalked a girl and shot a round from a shotgun through his car. He also discharged an MP5 submachine gun while other officers were down range. Mr. King reports that the Sergeant was later promoted. The same Sergeant allegedly sexually harassed a female

deputy and was later given command of the drug unit. Plt. SOF ¶ 98. He recounts how one Deputy, who was an alcoholic, would serve on duty while intoxicated. Plt. SOF ¶ 99.

Mr. King also confirmed that the "blue wall of silence" or "blue code" existed in the St. Charles County Sheriff's Department. Plt. SOF ¶ 85. He saw instances of other officers engaging in misconduct. Plt. SOF ¶'s 86, 87. Perhaps the most compelling admission regarding the silence of other officers who witnessed misconduct comes from the mouth of Sheriff Neer. When asked whether he had ever witnessed any misconduct on the part of another officer that he did not report to a supervisor or someone else, he responded, "Sure." Plt. SOF ¶ 46.

Germane to the facts of this case, Mr. King did not make a radio call when he stopped D.B. – he did not "call out." Plt. SOF ¶ 88. It was not uncommon for Deputies to not call out and the rule requiring Deputies to call out could have been enforced but was not and supervisors engaged in the practice as well. Plt. SOF ¶'s 89-92.

The evidence paints a picture of a law enforcement agency where the discipline and control is happenstance, unequal and inconsistent. Without effective control of the members of the department, abuse, such as that suffered by Plaintiff is not only a natural consequence of the failure to control but is all but certain to occur. This is particularly true when the defendant officer in this case already been sued once and cost the County the money to settle the case. The defendant County knew of his prior transgression and because of the Sheriff does not monitor suits filed or their results, he had, by his indifference to what should be a compelling fact causing an internal examination of the event, never reviewed the matter to determine whether Jason King required re-training, re-assignment, closer supervision or discipline. Declaration of Jason King, ¶ 7. Sheriff Neer's protocol for processing and handling internal affairs issues allows him to effectively ignore those he chooses to ignore and that too is indifferent to the rights of the

citizens who encounter St. Charles County Deputies.  Enforcement of a simple rule requiring that any time a Deputy initiates a traffic stop – if Defendant King knew that the rule was enforced, perhaps he would have felt less empowered to accost D.B. Whether that fact and all the others cited in the record here, compel a finding that the County caused the violations suffered by D.B. due to the ineffective monitoring, supervision and control of the Deputies for whom the County is responsible, is a question for the jury.

Defendant cites three Eighth Circuit cases, *Shrum v. Kluck*, 249 F.3d 773 (8th Cir. 2000), *Doe v. Gooden*, 214 F.3d 952 (8th Cir. 1999) and *Moody v. St. Charles*, 23 F.3d 1410 (8th Cir. 1994).   The cases cited do not control the issues in this cause.

*Shrum* was an appeal from the dismissal of Defendant School District.  The act alleged to have given rise to the school district's liability was premised on its entering a confidential settlement agreement with a teacher who had been accused of sexually inappropriate behavior towards students.  The agreement described the terms of his separation and the agreement's confidentiality along with a letter of recommendation, enabled the teacher to secure a teaching job at another school.  At his new school, the teacher molested a young boy and the parents sued to prior employer school district.

The parents asserted a claim under the Fourteenth Amendment and to make a constitutional violation, they had to prove that Defendant's conduct "shocked the conscience." They could not.  Here, the defense has not contested the underlying constitutional violation. Moreover, even if the defense contested whether the conduct of the Defendants "shocks the conscience" that would not dispose of the instant case because Plaintiff has also alleged a violation of the Fourth Amendment. The plaintiffs in *Shrum* relied on a single incident event – the confidential settlement and the letter of recommendation that hid the teacher's history. By

-12-

comparison, Plaintiff has demonstrated sufficient evidence of incidents over time that reveal the lack of supervision, control and discipline of members of the St. Charles County Sheriff's Department, that are sufficient to put the issue of County liability before the jury.

*Gooden,* another school case, is inapposite on its face because it does not involve a claim against an entity. Rather, the defendants are all individuals. It too, is a Fourteenth Amendment, "shocks the conscience" case and the Court notes that mere negligence will not support a claim under the Fourteenth Amendment.

*Moody* stands for the proposition that if there is no underlying constitutional violation, the County cannot be held liable. The individual defendant officer was granted summary judgment, therefore, the Court summarily affirmed the grant of summary judgment to the County. The sum total of the Court's discussion of the liability of the County is, "Moody's claims against the County … are predicated on his claim against Fishman. Since we find that Fishman is entitled to summary judgment, Moody's claims against the County… must similarly fail." *Moody* at 1412. Defendant does not challenge Plaintiff's assertion of a constitutional violation committed by Defendant King. Therefore it cannot assert reliance on the Holding of *Moody*.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be denied.

Respectfully submitted
7 October 2013

**THE RYALS LAW FIRM, P.C**.

By: */s/ Stephen M. Ryals*
Stephen M. Ryals #34149MO
3120 Locust Street
St. Louis, Missouri 63103
Tele: 314-862-6262
Fax: 314-880-2027
E-Mail: ryals@rblawstl.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October 2013, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system on all parties and counsel of record.

<i>/s/ Stephen M. Ryals</i>